UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DWAYNE ANTHONY JOHNSON,

      Plaintiff,                          Case No. 20-cv-12422
                                            Hon. Matthew F. Leitman

v.

HATATU ELUM, *et al.*,

      Defendants

_____/

# ORDER (1) SUSTAINING PLAINTIFF'S OBJECTIONS (ECF No. 28) TO REPORT AND RECOMMENDATION (ECF No. 27); (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT (ECF No. 8, 12, 19); AND (3) DENYING PLAINTIFF'S MOTION FOR A DEFAULT JUDGMENT (ECF No. 15)

Plaintiff Dwayne Anthony Johnson is a state inmate in the custody of the Michigan Department of Corrections (the "MDOC"). In this action, Johnson claims that four MDOC employees – Defendants Hatatu Elum, Michelle Parsons, Jeremy Howard, and Tiffani Kisor – retaliated against him by, among other things, threatening to transfer him, and ultimately transferring him, to a prison in Michigan's Upper Peninsula. (*See* Compl., ECF No. 1.) Defendants moved for summary judgment and/or to dismiss.[1] (*See* Def.s' Mots., ECF Nos. 8, 12, and 19.) Johnson

_____

[1] Defendants filed their motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). (*See* Defs.' Mots., ECF Nos. 8, 12, and 19.) However, while Defendants did not specifically seek dismissal under Federal Rule of Civil Procedure

also filed a motion for a default judgment with respect to Defendant Parsons. (*See* Johnson Mot., ECF No. 15.)

The motions were referred to the assigned Magistrate Judge.  On June 21, 2021, the Magistrate Judge issued a report and recommendation in which he recommended that the Court deny Johnson's default judgment motion (the "June 21 R&R"). (*See* June 21 R&R, ECF No. 26.)  Johnson has not filed objections to the June 21 R&R.  The Court will **ADOPT** the recommended disposition of the June 21 R&R and will **DENY** Johnson's default judgment motion.[2]

On July 27, 2021, the Magistrate Judge issued a report and recommendation in which he recommended that the Court grant the Defendants' motions for summary judgment (the "July 27 R&R"). (*See* July 27 R&R, ECF No. 27.)  Johnson has now filed timely objections to certain portions of the July 27 R&R.  The Court has carefully reviewed the objections and sustains them.  Accordingly, for the reasons stated below, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motions for summary judgment and/or to dismiss.

---

12(b)(6), they did attack the sufficiency of Johnson's allegations in their motions. (*See*, *e.g.*, Mot., ECF No. 8, PageID.89-92.)

[2] Johnson's failure to object to the June 21 R&R releases the Court from its duty to independently review the matter. *See Thomas v. Arn,* 474 U.S. 140, 149 (1985).  In addition, his failure to file objections to the June 21 R&R waives any further right to appeal. *See Howard v. Sec'y of Health and Human Servs.,* 932 F.2d 505 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

**I**

In September 2019, Johnson was incarcerated at the G. Robert Cotton Correctional Facility ("JCF").  The Defendants are each MDOC employees who worked at the JCF at all relevant times.  Elum was the JCF's librarian; Parsons was an assistant residential unit supervisor; Howard was a deputy warden; and Kisor was an assistant deputy warden.

This action arises out of assistance that Johnson provided another inmate, Floyd Chambers, in connection with a court filing that Chambers was attempting to make.  Johnson says that in September 2019, Chambers asked him to re-type an Application for Leave to Appeal that Chambers intended to file in the Michigan Court of Appeals. (*See* Compl. at ¶2, ECF No. 1, PageID.7; Chambers Aff. at ¶1, ECF No. 1, PageID.15.)  According to Johnson, even though the MDOC had not assigned him to serve as Chambers' legal writer, Chambers needed his help because Chambers was in serious jeopardy of "miss[ing] the deadline for filing his application in the [Court of Appeals]." (Compl. at ¶3, ECF No. 1, PageID.8; Chambers Aff. at ¶3, ECF No. 1, PageID.15.)  Johnson therefore agreed to re-type Chambers' application on spare carbon paper that he had available. (*See* Compl. at ¶5, ECF No. 1, PageID.8.)  Johnson then told Chambers that he (Chambers) could use the prison library to make the number of copies of the Application for Leave to Appeal required by the Michigan Court of Appeals. (*See id.*)

On October 4, 2019, Johnson "was doing some research on the computer in the law library" when he heard Chambers speaking to Elum, the librarian, about making copies of his Application for Leave to Appeal. (*Id.* at ¶6, PageID.8.) According to Johnson, Elum was refusing to make copies of Chambers' Application for Leave to Appeal because it had been typed on carbon paper and was not "an original copy." (*Id.*) Chambers told Elum that he needed the copies made to meet his "court deadline," but Elum still refused. (*Id.*) At this point, Johnson "got off the computer and went up [the] desk to explain to [] Elum" that he had had helped Chambers re-type his application so that Chambers could "meet his court filing deadline." (*Id.* at ¶7, PageID.9.) Elum responded that Johnson "didn't have anything to do with matters involving [] Chambers['] legal work[,] and [she] stated that she wasn't going to copy" Chambers' documents. (*Id.*)

Johnson exited the library shortly thereafter and ran into JCF's warden. Johnson explained Chambers' situation to the warden, including the fact that Elum had refused to make copies of Chambers' legal documents and that "Chambers had a court filing deadline" that Chambers was in jeopardy of missing. (*Id.* at ¶11, PageID.9-10.) The warden "stated that he would check into the matter." (*Id.*, PageID.10.)

"When [Johnson] entered back into the library, [Elum] stated to [him], 'Mr. Johnson, you didn't have anything to do with the situation regarding Prisoner

4

Chambers.[']" (*Id.* at ¶12, PageID.10.)  Johnson then "told [] Elum that [] Chambers was a friend of [his], that he was 84 years old and didn't know anything about criminal law and procedure. [He] told [Elum] that [] Chambers had a deadline of October 8, 2019 in which to file his legal work in the [Michigan Court of Appeals], and that he needed his copies so he [could] make his deadline." (*Id.*)  Elum responded, "don't worry Mr. Johnson, I know how to get rid of prisoners like you who speak up for other prisoners." (*Id.*)  Johnson then said that "the only thing [he] did was explain to the warden how a carbon copy is used as the original and that [] Chambers needed a specific number of copies made for his application." (*Id.*) Elum "told [him] 'not to worry because she knew how to get rid of prisoners like [him], and that [he would] find out what she [was] talking about." (*Id.* at ¶13, PageID.10.) Johnson interpreted Elum's comments as a threat to have him transferred from the JCF to another MDOC facility. (*See id.*)

When Johnson returned to his housing unit from the library, he "immediately filed an institutional grievance" against Elum. (*Id.* at ¶16, PageID.10.)  In the grievance, which Johnson attached to his Complaint, he said that "after [he] returned to the library after explaining to the warden the situation with [] Chambers['] inability to pay for copies," Elum "let [him] know that she knew how to get rid of prisoners like [him]." (Grievance, ECF No. 1, PageID.23.)  That grievance was heard

5

by, and eventually rejected by, Defendant Kisor. (*See* Compl. at ¶¶ 17-19, ECF No. 1, PageID.10-11.)

Less than a month later, on October 24, 2019, Defendant Parsons conducted a "Security Classification Screen review" of Chambers. (*Id.* at ¶23, PageID.12; *see also* Security Classification Screen Review form, ECF No. 1, PageID.18.)  The "purpose" of this screening, as reflected on the review form, was "transfer." (Security Classification Screen Review form, ECF No. 1, PageID.18.)  The review form, and Johnson's subsequent transfer, was approved by Defendant Howard. (*See id.*)

On October 29, 2019, Johnson was not yet aware that he was going to be transferred.  While in the library, Elum walked up to him "with a smile on her face" and said, "Mr. Johnson, you take care of yourself." (Compl. at ¶24, ECF No. 1, PageID.12.)  When Johnson asked what she meant by that comment, Elum responded "you'll find out soon enough." (*Id.*)  The next day, Elum was transferred to the Chippewa Correctional Facility ("URF") in the Upper Peninsula. (*See id.* at ¶26, PageID.12.)  Johnson insists that his "transfer was nothing but a retaliatory action taken against [him] as a result of [his] assisting [] Chambers with his legal work, and the filing of a grievance against [Elum]." (*Id.* at ¶28, PageID.13.)

After Johnson arrived at the URF, he immediately "filed [] institutional grievance[s] against [] Parsons and [] Howard" arising out of his transfer. (*Id.* at ¶27,

PageID.12; *see also* Grievances, ECF No. 1, PageID.19-22.)  In these grievances, Johnson asserted that Parsons was not authorized to complete the Security Classification Screen Review form that initiated the transfer process because Parsons was not the residential unit supervisor for his housing unit. (*See* Grievances, ECF No. 1, PageID.19-20; *see also id.*, PageID.28.)  Johnson did not file grievances against Elum or Kisor arising out of his transfer at that time.[3]

**B**

Johnson filed this action against Elum, Parsons, Howard, and Kisor on August 18, 2020.  He says that all four Defendants retaliated against him for engaging in protected conduct.  With respect to Elum, he claims that she "exercised 'retaliatory' conduct" in response to his (1) "providing assistance to [] Chambers [] who would not have been otherwise able to pursue legal redress," (2) "talking to the warden about [Elum's] refusal to copy [] Chambers['] legal documents," and (3) "for filing a grievance against her." (*Id.* at ¶32, PageID.13.)  He further asserts that Parsons and Howard "willfully participated in the 'retaliatory' transfer of [him] on behalf of [] Elum." (*Id.* at ¶¶ 34-35, PageID.13-14.)   Finally, Johnson alleges that Kisor "willfully participated in the 'retaliatory' transfer of [him] for assisting [] Chambers [] with his legal work and refusing to sign off on the grievance against [] Elum." (*Id.*

---

[3] Three weeks later, on November 22, 2019, Johnson filed an additional grievance against Kisor arising out of his transfer and Kisor's treatment of his grievance against Elum. (*See* ECF No. 1, PageID.38.)

7

at ¶14.)  Johnson brings his action against the Defendants in both their personal and official capacities. (*See* Compl., PageID.2.)

Defendants have each moved for summary judgment and/or to dismiss. (*See* Defs.' Mots., ECF No. 8, 12, 19.)  Defendants argue that (1) Johnson failed to exhaust his claims through the MDOC's institutional grievance process, (2) Johnson's allegations "do not state any claims against the [D]efendants," and (3) the Defendants have immunity from the claims Johnson brings against them in their official capacities. (*Id.*)

The Magistrate Judge recommended granting the Defendants' motions in the July 21 R&R. (*See* July 21 R&R, ECF No. 27.)  The Magistrate Judge concluded that:

- Johnson had failed to exhaust his retaliation claim against Defendant Kizor;

- Johnson had failed to exhaust his retaliation claim against Defendant Elum to the extent that the claim arose out of her alleged participation in his transfer;

- Johnson had exhausted (1) his retaliation claim against Elum to the extent that the claim arose out of her threat to transfer him and (2) his claims against Parsons and Howard for participating in his transfer, but those retaliation claims failed as a matter of law because they were not plausible; and

- Defendants had immunity from the claims brought against them in their official capacities.

8

(*Id.*)

Johnson filed objections to the July 21 R&R on August 3, 2021. (*See* Objections, ECF No. 21.)  In the objections, Johnson maintains that he has stated plausible retaliation claims against Elum arising out of her threat to transfer him and against Parsons and Howard arising out of their participation in his transfer. (*See id.*)  However, Johnson did not argue in the objections that he had exhausted his claim against Kisor or his claim against Elum arising out of his transfer.  Nor did Johnson address the Magistrate Judge's conclusion that he could not proceed against the Defendants in their official capacities.

## II

### A

When a party objects to portions of a Magistrate Judge's report and recommendation, the Court reviews those portions *de novo. See* Fed.R.Civ.P. 72(b)(3); *Lyons v. Comm'r of Soc. Sec.*, 351 F.Supp.2d 659, 661 (E.D. Mich. 2004). The Court has no duty to conduct an independent review of the portions of a report and recommendation to which the parties did not object. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985).

### B

As noted above, Johnson did not object to the Magistrate Judge's recommendation that the Court dismiss (1) his retaliation claim against Elum to the

extent that the claim arises out of her alleged participation in his transfer (due to his failure to exhaust that portion of his claim), (2) his retaliation claim against Kisor (due to his failure to exhaust that claim), and (3) his claims against the Defendants in their official capacities. The Court therefore **ADOPTS** the Magistrate Judge's recommended disposition of those claims and **DISMISSES** them.

**C**

The Court next turns to the portion of Johnson's retaliation claim that arises out of Elum's alleged threat to have Johnson transferred. In order to prevail on this claim, Johnson must establish three elements: "(1) [he] engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by [his] protected conduct." *Thaddeus–X v. Blatter,* 175 F.3d 378, 394 (6th Cir. 1999). Defendants argue that Johnson has failed to allege the second element – that he engaged in protected conduct. The Court is not yet prepared to reach that conclusion.

In the Complaint, Johnson identifies several actions that could potentially constitute protected conduct for which Elum retaliated. For example, Johnson alleges that he assisted Chambers with his time-sensitive legal work and that, on October 4, 2019, he spoke up for Chambers when Elum refused to make copies of

10

the documents Chambers needed for his Application for Leave to Appeal. (*See* Compl. at ¶12, ECF No. 1, PageID.10.)  Johnson also pleads that on that same day, he complained to the warden that Elum had wrongfully interfered with Chambers' ability to access the courts. (*See id.* at ¶¶ 11, 32, PageID.10-11, 13; *see also* Grievance, ECF No. 1, PageID.23.)

Defendants counter that Johnson's provision of legal assistance to Chambers did not constitute protected conduct.  According to Defendants, "MDOC policy prohibit[ed] Johnson from assisting Chambers with his legal paperwork" because "Johnson was not a legal writer assigned to assist [] Chambers." (Def.s' Mot., ECF No. 8, PageID.87.)  Defendants assert that Johnson's assistance of Chambers therefore cannot be "protected conduct." (*Id.*)  But the United States Court of Appeals for the Sixth Circuit has explained that while "an inmate does not generally have an independent right to help other prisoners with their legal claims … [s]uch assistance is protected, however, when the inmate receiving the assistance would otherwise be unable to pursue legal redress" or access the courts. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).  And here, Johnson plausibly alleges that Chambers needed his assistance in order to meet a filing deadline in the Michigan Court of Appeals.  Defendants have not yet fully explained to the Court's satisfaction how, under these circumstances, the MDOC policy on which they rely can be reconciled with the rule adopted by the Sixth Circuit.  At the summary

11

judgment stage, Defendants may re-raise their argument that Johnson's assistance to Chambers did not amount to protected conduct.

## D

Finally, the Court addresses Johnson's retaliation claims against Howard and Parsons.  In the motion to dismiss, Defendants argue that "[a]s for Parsons and Howard, the only allegations Johnson makes against them are that they signed forms related to his transfer. Without more, such allegations simply do not state any claims against the defendants." (Def.s' Mot., ECF No. 92, PageID.92.)  But Johnson does say more.  In effect, he alleges that Howard and Parsons actively participated in the decision to transfer him.  For instance, Johnson says that Parsons prepared the Security Classification Screen Review form that initiated his transfer and that Howard approved Parsons' preparation of that form and his transfer. (*See*, *e.g.*, Compl. at ¶¶ 23, 27, ECF No. 1, PageID.12-13; *see also* Security Classification Screen Review form, ECF No. 1, PageID.18; Grievances, ECF No. 1, PageID.19-22.)  And Johnson plausibly alleges that Parsons and Howard took these actions because he engaged in protected conduct, including but not limited to filing a grievance against Elum and providing legal assistance to Chambers. An inference that Parsons and Howard acted in response to Johnson's protected conduct may be supported by the closeness in time between the filing of Johnson's grievance against Elum and his provision of legal assistance to Chambers, on the one hand, and his

transfer less than four weeks later, on the other hand.  Such an inference may also be supported by the allegedly suspicious circumstances surrounding Johnson's transfer.  As explained above, Parsons completed the Security Classification Screen Review form that Johnson says began the transfer process.  But Johnson says that Parsons had no authority to prepare that form because Parsons was not the residential unit supervisor for his housing unit. (*See id.*)  Moreover, Johnson says that he had not received any major misconduct tickets that would normally have precipitated a transfer. (*See id.*)   Under these circumstances, Johnson plausibly alleges that Howard and Parsons engaged in retaliatory conduct.

For all of these reasons, the Court **DENIES** Defendants' motions for summary judgment and/or to dismiss with respect to Johnson's retaliation claims against Parsons and Howard for their participation in his transfer.

## IV

For all of the reasons explained above, **IT IS HEREBY ORDERED** as follows:

- Defendants' motions for summary judgment and/or to dismiss (ECF Nos. 8, 12, and 19) are **GRANTED** with respect to Johnson's claims against Defendant Kizor, Johnson's claims against and Defendant Elum that arose out of his transfer, and Johnson's claims against the Defendants in their official capacities.  Those claims are **DISMISSED**.

13

- Defendants' motions are **DENIED** in all other respects; and

- Johnson's motion for a default judgment (ECF No. 15) is **DENIED**.

The only claims that remain in this case are (1) Johnson's retaliation claim against Elum arising out of her threat to transfer him and (2) Johnson's retaliation claims against Parsons and Howard for their participation in his transfer.  The parties shall now proceed to discovery.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  September 3, 2021


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 3, 2021, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764

14